# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **NORMAN IP HOLDINGS, LLC,** | § § § | 6:12cv512 |
| Plaintiff, | § § | SEVERED FROM AND CONSOLIDATED INTO |
| vs. | § § | **CASE NO. 6:11-CV-495** |
| **LEXMARK INTERNATIONAL, INC.,** et al., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following thirteen motions to dismiss for improper joinder or sever:

- TomTom's Motion to Dismiss for Improper Joinder (Docket No. 39);

- Garmin International, Inc.'s and Garmin USA, Inc.'s Motion to Dismiss or, Alternatively, for Severance Due to Misjoinder (Docket No. 47);

- Daimler North America Corporation and Mercedes-Benz USA LLC's Motion to Dismiss for Improper Joinder, or in the Alternative, Partial Motion to Dismiss Plaintiff's Complaint (Docket No. 109);

- General Electric Company's Motion to Dismiss for Misjoinder (Docket No. 121);

- Defendant ViewSonic Corporation's Motion to Dismiss for Improper Joinder (Docket No. 132);

- Motion to Sever Plaintiff's Claims Against Ford Motor Company and Memorandum in Support (Docket No. 145);

- Vizio, Inc.'s Motion to Dismiss for Misjoinder (Docket No. 181);

- Lexmark's Motion for Severance from All Other Defendants (Docket No. 192);

- Motion to Sever and Then Transfer Plaintiff's Claims Against General Motors, LLC and Brief in Support (Docket No. 195);

- BMW of North America, LLC's Motion to Sever and Memorandum in Support (Docket No. 198);

- Defendant Volkswagen Group of America, Inc's Motion to Sever (Docket No. 224);

- Joint Motion to Dismiss or, in the Alternative, Motion to Sever (Docket No. 226); and

- Defendant Xerox Corporation's Motion to Sever (Docket No. 239).

For the reasons stated herein, these motions are **GRANTED IN PART** to the extent that they request severance. Further, the severed actions are **CONSOLIDATED** with this action only for pretrial issues, except venue. This case shall serve as the lead case for the consolidated issues. The individual cases will remain active for venue motions and trial. All motions, other than venue motions, shall be filed in the consolidated case.

## BACKGROUND

On September 15, 2011, Norman IP Holdings, LLC ("Norman") filed the instant suit against Brother International Corporation and Lexmark International Inc. *See* Docket No. 1. On December 9, 2011, Norman filed its first amended complaint, adding Ricoh Americas Corporation as a defendant. *See* Docket No. 8. Finally, on January 27, 2012, Norman filed its second amended complaint adding the following twenty-two entities: Belkin International, Inc.; BMW of North America, LLC; Daimler North America Corporation; Mercedes-Benz USA, LLC; D-Link Systems, Inc.; Dish Network Corporation; Ford Motor Company; Garmin International, Inc.; Garmin USA, Inc.; General Electric Company; General Motors Company; JVC Americas Corporation; Novatel Wireless, Inc.; Novatel Wireless Solutions, Inc.; Novatel

Wireless Technology, Inc.; TomTom, Inc.; ViewSonic Corporation; Vizio, Inc.; Volkswagen Group of America, Inc.; Xerox Corporation; ZTE (USA) Inc.; and ZTE Solutions Inc. *See* Docket No. 15. Defendants Brother International Corporation; Daimler North America Corporation; Novatel Wireless Solutions, Inc.; and Novatel Wireless Technology, Inc. have since been dismissed from the case. *See* Docket Nos. 11, 86, & 200. Norman alleges that each defendant infringes one or more of U.S. Patent Nos. 5,530,597; 5,502,689; 5,592,555; 5,608,873; and 5,771,394.

The original filing date is significant because it is one day before the Leahy-Smith America Invents Act ("AIA") was signed into law, which clarified the joinder requirements for cases alleging patent infringement. Before the AIA, courts in this district permitted joinder of defendants accused of infringing the same patents because there was "a nucleus of operative facts or law in the claims against all the defendants . . . ." *Mymail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 457 (E.D. Tex. 2004). However, the AIA codified a new test for joinder in patent infringement cases, clarifying that "accused infringers may not be joined in one action as defendants . . . based solely on allegations that they each have infringed the patent or patents in suit." Leahy-Smith America Invents Act, Pub. L. No. 112-29 Sec. 19(d) (to be codified as 35 U.S.C. § 299 (2012)). Section 299—a new addition to the code—applies to any action filed on or after the date the AIA was signed into law. AIA, Pub. L. No. 112-29 Sec. 19(e).

## APPLICABLE LAW

*Joinder*

Defendants may be joined in an action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). In the patent infringement

3

context, claims against independent defendants may not be joined under Rule 20 "unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." *In re EMC Corporation*, 677 F.3d 1351, 1359 (Fed. Cir. 2012).[1] That the accused products or processes of the defendants are similar is not enough. *Id.* Other relevant factors in considering whether joinder is proper include: (1) the temporal proximity of alleged infringement; (2) the relationship among defendants; (3) the use of common components in the accused products; (4) licensing or technology agreements between defendants; (5) shared development and manufacturing; and (6) whether the damages sought are based on lost profits. *Id.* at 1359–60. An improperly joined party may be dropped from the action or have the claims against them severed. FED. R. CIV. P. 21.

*Consolidation*

"If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a). In applying Rule 42, a court has considerable discretion. *In re EMC*, 677 F.3d at 1360; *see also Luera v. M/V Albeta*, 635 F.3d 181, 194 (5th Cir. 2011) ("Rule 42(a) provides district courts with broad authority to consolidate actions that 'involve a common question of law or fact.'").

**ANALYSIS**

Norman argues the AIA does not apply to the defendants joined after September 15, 2011, because the original complaint *instituted* the civil action before the AIA was signed into law. Norman further contends that, even if the AIA provisions are applicable, the defendants

---

[1] The *In re EMC* court made clear that it was addressing the joinder requirements under Rule 20, not those codified by the AIA. *See In re EMC*, 677 F.3d at 1360 n.4. However, this Court finds that the *In re EMC* analysis of what constitutes a common transaction or occurrence for the purpose of Rule 20 is persuasive regarding interpretation of common transactions or occurrences under AIA.

4

were properly joined because use of the ARM architecture underlies each defendant's alleged infringement. Norman alternatively requests that any severed causes of action be consolidated under Rule 42.

*Joinder*

Whether the AIA joinder provision applies to the defendants joined via amended complaint is of no moment in the instant case. Under both Rule 20 and the AIA, the added defendants were not properly joined because the claims against each defendant do not relate to "the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a)(2)(A); 35 U.S.C. § 299(a)(1). Norman's second amended complaint generally alleged infringement of the patents-in-suit against each of the defendants, mentioning ARM processors with respect to only three defendants—Daimler, GM, and ViewSonic—and there only by way of example. *See* Docket No. 15, at 14 ("The infringing Daimler systems include, for example, Daimler's infotainment and navigation systems (including but not limited to multimedia chipsets for infotainment systems such as ARM11 processors related to mbrace2) . . . ."); *id.* at 18 ("The infringing GM systems include, for example, GM infotainment and navigation systems (for example, GM infotainment systems containing multimedia chipsets such as ARM11 processors (e.g., CUE)) . . . ."); *id.* at 20 ("The infringing ViewSonic systems include, for example, the multimedia chipsets embedded within tablets and televisions (including, but not limited to, ARM Cortex A8 in the ViewPad 10e and Mstar chipset within the VT2730 LCDTV) . . . ."). Norman has more recently supplied "a non-exhaustive account of the overlap of highly similar processors cores, including ARM," in its response to BMW's motion to sever and transfer. *See* Docket No. 234, at 10.

Norman's allegations regarding the common use of ARM processor designs are not sufficient to show that there is a common transaction or occurrence among the defendants

warranting joinder. The complaint did not mention ARM processors as a defining characteristic regarding each defendant's alleged infringement, and the three instances where ARM cores were identified, they were listed merely as non-limiting examples of infringing system components. Accordingly, Norman's broad allegations regarding common processor or processor family designs are insufficient to establish that the allegations of infringement against each defendant relate to a common transaction or occurrence for joinder purposes.[2] Under both Rule 20 and the AIA joinder provision, the unrelated defendants in this case were improperly joined and should either be dismissed from the case or severed into their own cases. Accordingly, the Court **ORDERS** that claims against the newly added defendants be severed into separate causes of action as detailed below.

*Consolidation*

This Court has limited resources and constantly strives to employ efficient and cost-saving case-management procedures for the benefit of the parties, counsel, and the Court. *See WordCheck Tech, LLC v. Alt-N Techs, Ltd.*, No. 6:10-cv-457 (E.D. Tex. July 20, 2011) (permitting limited early discovery to facilitate early mediation discussion); *Parallel Networks, LLC v. Abercrombie & Fitch*, No. 6:10-cv-111 (E.D. Tex. Mar. 15, 2011) (employing an early Markman proceeding to efficiently resolve a multi-defendant case). In response to the AIA's joinder provision, plaintiffs now serially file multiple single-defendant (or defendant group) cases involving the same underlying patents. This presents administrative challenges for the Court and, left unchecked, wastes judicial resources by requiring common issues to be addressed individually for each case. For example, what was once a single motion to substitute parties (or join a plaintiff) becomes multiple motions. *See, e.g.*, *Klausner Techs., Inc. v. The Broadvox*

---

[2] As these cases develop, it is possible that common facts and law will become evident among certain cases or classes of cases justifying a consolidated trial on certain issues among certain parties. However, such is not evident at this stage of these proceedings.

*Holding Co., LLC*, No. 6:11-cv-575 (E.D. Tex. June 6, 2012) (order granting motion to substitute plaintiff—over thirty similar motions were filed in related cases). These must each be processed by the Court and staff, including review of the underlying motions and docketing individual orders addressing each motion. More substantive motions, particularly where the same arguments are used in each individual case, present even more difficulties. There, the Court is required to waste time digesting duplicate arguments to ensure that new arguments are not hidden among the plethora of common arguments.

Federal Rule of Procedure 42 provides a mechanism for district courts to better conserve judicial resources via consolidation for certain common issues such as pretrial, *Markman*, or trial. The Federal Circuit has recently reiterated that district courts may consolidate matters that share a common question of law or fact. *See In re EMC*, 677 F.3d at 1360; *see also C.R. Bard, Inc. v. Med. Components, Inc.*, No. 2:12-cv-32-TS-EJF, slip op. at 2–3 (D. Utah July 25, 2012) (recognizing that the AIA does not affect a district court's ability to consolidate related patent cases for pretrial matters).

Thus, to permit efficient case management, the Court **ORDERS** these newly severed actions consolidated with the original filed case as to all issues, except venue, through pretrial only.

*Motions to Transfer*

Motions to transfer venue under 28 U.S.C. § 1404(a) will be considered only as to the defendants in the severed case, not as to all defendants in the pretrial consolidated case. For instance, the Court's analysis of GM's Motion to Transfer (Docket No. 195) will only consider GM and Norman in the transfer factor analysis. However, in the event that transfer is appropriate, the Court shall retain the case through the *Markman* phase of the proceedings. Once the *Markman* opinion issues, any pending orders to transfer shall become effective. This serves

two important purposes. First, it conserves judicial resources by requiring only one district court to address the underlying disputed claim terms. The claim construction process requires a thorough understanding of the technology at issue, often demanding a substantial investment of time and energy. It does not make sense for two courts to plow the same ground. Second, this case management approach ensures that the related patent cases proceed initially on a consistent claim construction, thus avoiding inconsistent rulings.[3]

However, this case management approach should not be perceived as an invitation to file motions to transfer venue. In recent years, this Court has expended *considerable* time addressing venue.[4,5] This Court has many, many issues before it—both criminal and civil—and it carries one

---

[3] Once a case is transferred, the transferee court is of course not bound by the claim construction of this court, and may modify it if it believes it is appropriate. But, much like a magistrate judge's recommendation, it is hoped that this court's claim construction analysis will be of help to the transferee court, whether modified or not.

[4] The following list of motions to transfer handled by Judge Davis reveals the enormous amount of time and resources the Court and the parties invest in § 1404 convenience issues that have nothing to do with the merits of the cases. *See Jaipuria v. LinkedIn Corp.*, No. 6:11-cv-66 (E.D. Tex. Mar. 29, 2012) (denied); *Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, No. 6:11-cv-305 (E.D. Tex. Mar. 28, 2012) (granted); *Advanced Display Techs. of Tex., LLC v. AU Optronics Corp.*, No. 6:11-cv-11 (E.D. Tex. Mar. 27, 2012) (denied); *Ventronics Sys., LLC v. Drager Med. GmbH*, No. 6:10-cv-582 (E.D. Tex. Oct. 20, 2011) (granted); *WI-LAN Inc. v. Alcatel-Lucent USA Inc.*, No. 6:10-cv-521 (E.D. Tex. Sept. 30, 2011) (denied); *Guardian Media Techs., Ltd. v. Acer Am. Corp.*, No. 6:10-cv-597 (E.D. Tex. Sept. 30, 2011) (denied); *Ericsson Inc. v. D-Link Corp.*, No. 6:10-cv-473 (E.D. Tex. Sept. 29, 2011) (denied); *Consolidated Work Station Computing, LLC v. Dell Inc.*, No. 6:10-cv-620 (E.D. Tex. Sept. 28, 2011) (denied); *Uniloc USA, Inc. v. BMC Software, Inc.*, No. 6:10-cv-636 (E.D. Tex. Sept. 20, 2011) (denied); *Optimum Power Solutions LLC v. Apple Inc.*, No. 6:10-cv-61 (E.D. Tex. Feb. 22, 2011) (granted); *Brooks Instrument, LLC v. MKS Instruments, Inc.*, No. 6:10-cv-221 (E.D. Tex. Feb. 14, 2011) (denied); *QVC, Inc. v. Endeca Techs., Inc.*, No. 6:11-cv-68 (E.D. Tex. Feb. 10, 2011) (granted); *ON Semiconductor Corp. v. Hynix Semiconductor Inc.*, No. 6:09-cv-390 (E.D. Tex. Sept. 30, 2010) (granted); *Eolas Techs. Inc. v. Adobe Sys. Inc.*, No. 6:09-cv-446 (E.D. Tex. Sept. 28, 2010) (denied); *EMG Tech., LLC v. Apple, Inc.*, No. 6:08-cv-447 (E.D. Tex. Sept. 28, 2010) (denied); *i2 Techs., Inc. v. Oracle Corp.*, 6:09-cv-194 (E.D. Tex. Aug. 17, 2010) (denied); *Canrig Drilling Tech. Ltd. v. Omron Oilfield & Marine, Inc.*, No. 6:09-cv-414 (E.D. Tex. Aug. 17, 2010 (denied); *HTI IP, LLC v. DriveOK, Inc.*, No. 6:09-cv-370 (E.D. Tex. Aug. 4, 2010) (granted); *Centre One v. Vonage Holdings Corp.*, No. 6:08-cv-467 (E.D. Tex. July 22, 2010) (denied); *Centre One v. Vonage Holdings Corp.*, No. 6:08-cv-467 (E.D. Tex. Aug. 10, 2009) (denied); *Aten Int'l Co. LTD. v. Belkin Corp.*, No. 2:06-cv-296 (E.D. Tex. June 25, 2009) (granted); *Chirife v. St. Jude Med., Inc.*, No. 6:08-cv-480 (E.D. Tex. June 16, 2009) (denied); *Acceleron, LLC v. Egenera, Inc.*, No. 6:08-cv-417 (E.D. Tex. June 9, 2009) (denied); *Sybase, Inc. v. Vertica Sys., Inc.*, No. 6:08-cv-24 (E.D. Tex. June 9, 2009) (denied); *Mass Engineered Design, Inc. v. Ergotron, Inc.*, No. 2:06-cv-272 (E.D. Tex. Apr. 30, 2008) (denieed); *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, No. 6:06-cv-222 (E.D. Tex. Mar. 19, 2008) (denied); *Cal. Inst. Tech. v. Intuitive Surgical Inc.*, No. 6:07-cv-4 (E.D. Tex. Aug. 20, 2007) (denied).

[5] Additionally, Magistrate Judge Love addressed the following motions to transfer in cases referred to him for pre-trial by Judge Davis. *See Azure Networks LLC v. CSR PLC*, No. 6:11-cv-139 (E.D. Tex. June 25, 2012) (denied); *Innovative Automation LLC v. Audio & Video Labs, Inc.*, No. 6:11-cv-234 (E.D. Tex. May 30, 2012) (denied); *Patent Harbor, LLC v. Twentieth Century Fox Home Entm't, LLC*, No. 6:10-cv-607 (E.D. Tex. May 25, 2012) (denied); *Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34 (E.D. Tex.

of the heaviest patent dockets in the country; yet, venue in patent cases has increasingly become an extremely expensive and time-consuming matter, not only for the Court but for the parties as well. For instance, in a recent set of serially filed cases involving only seven defendant groups, the parties had already expended over $700,000 on venue-related discovery and briefing before the cases were even ready for status conference (i.e., before all defendants had answered the complaint). This Court currently has approximately forty pending motions to transfer venue. If the average cost of discovery and briefing for each of these transfer motions is only $300,000, then approximately $12 million is being spent by the parties on an issue that does not move the

---

Apr. 19, 2012) (denied); *Innovative Global Sys. LLC v. OnStar, LLC*, No. 6:10-cv-574 (E.D. Tex. Feb. 14, 2012) (granted); *Phil-Insul Corp. v. Reward Wall Systems, Inc.*, No. 6:11-cv-53 (E.D. Tex. Feb. 10, 2012) (granted); *Datatreasury Corp. v. Capital One Fin. Corp.*, No. 6:11-cv-92 (E.D. Tex. Jan 30, 2012) (denied); *Eidos Display, LLC v. AU Optronics Corp.*, No. 6:11-cv-201 (E.D. Tex. Dec. 21, 2011) (denied); *Indus. Tech. Research Inst. v. LG Corp.*, No. 6:10-cv-628 (E.D. Tex. Nov. 29, 2011) (granted); *Gemalto S.A. v. HTC Corp.*, No. 6:10-cv-561 (E.D. Tex. Nov. 18, 2011) (denied); *W. Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688 (E.D. Tex. Oct. 27, 2011) (granted); *Lonestar Inevntions, L.P. v. Sony Elecs. Inc.*, No. 6:10-cv-588 (E.D. Tex. Aug. 29, 2011) (denied); *Global Sessions LP v. Travelocity.com LP*, No. 6:10-cv-671 (E.D. Tex. Aug. 26, 2011) (denied); *TransData, Inc. v. Tri-County Elec. Coop., Inc.*, No. 6:11-cv-46 (E.D. Tex. Aug. 18, 2011) (denied); *Locked & Loaded Products, Inc. v. Kinedyne Corp.*, No. 6:10-cv-484 (E.D. Tex. Aug. 10, 2011) (denied); *Stragent, LLC v. Audi AG*, No. 6:10-cv-227 (E.D. Tex. July 18, 2011) (denied); *Ivera Med. Corp. v. Hospira, Inc.*, No. 6:10-cv-545 (E.D. Tex. May 17, 2011) (denied in part, granted in part); *JIA Jewelry Importers of Am., Inc. v. Pandora Jewelry, LLC*, No. 6:10-cv-517 (E.D. Tex. Mar. 24, 2011) (granted); *Sipco, LLC v. Control4 Corp.*, No. 6:10-cv-249 (E.D. Tex. Feb. 8, 2011) (granted); *Illumination Mgmt. Solutions, Inc. v. Ruud Lighting, Inc.*, No. 6:10-cv-279 (E.D. Tex. Dec. 17, 2010) (granted); *Sonix Tech. Co. Ltd. v. VTech Elecs. N. Am. LLC*, No. 6:10-cv-68 (E.D. Tex. Dec. 9, 2010) (granted); *NovelPoint Learning LLC v. Leapfrog Enters., Inc.*, No. 6:10-cv-229 (E.D. Tex. Dec. 6, 2010) (denied); *KlausTech, Inc. v. Admob, Inc.*, No. 6:10-cv-39 (E.D. Tex. Nov. 30, 2010) (granted); *MGM Well Services, Inc. v. Production Control Services, Inc.*, No. 6:10-cv-88 (E.D. Tex. Nov. 22, 2010) (granted); *Norman IP Holdings, LLC v. Casio Computer Co., Ltd.*, No. 6:09-cv-270 (E.D. Tex.Oct. 27, 2010) (denied); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-448 (E.D. Tex. July 13, 2010) (granted); *Fractus, SA v. Samsung Electronics Co., Ltd.*, No. 6:09-cv-203 (E.D. Tex. June 10, 2010) (denied); *Tsera, LLC v. Apple, Inc.*, No. 6:09-cv-312 (E.D. Tex. May 12, 2010) (denied); *All Voice Developments US, LLC v. Microsoft Corp.*, No. 6:09-cv-366 (E.D. Tex. April 8, 2010) (denied); *Dura Operating Corp. v. Magna International Inc.*, No. 6:08-cv-455 (E.D. Tex. Mar. 26, 2010) (granted); *Colorquick, L.L.C. v. Vistaprint Limited*, No. 6:09-cv-323 (E.D. Tex. Mar. 23, 2010) (denied); *Realtime Data, LLC v. Stanley*, No. 6:09-cv-326 (E.D. Tex. Mar. 18, 2010) (denied); *Innovative Global Systems LLC v. Turnpike Global Technologies L.L.C.*, No. 6:09-cv-157 (E.D. Tex. Oct. 20, 2009) (denied); *Emanuel v. SPX Corp./OTC Tools Div.*, No. 6:09-cv-220 (E.D. Tex. Sept. 21, 2009) (denied); *Aloft Media, LLC v. Yahoo!, Inc.*, No. 6:08-cv-509 (E.D. Tex. June 10, 2009) (denied); *Document Generation Corp. v. Allscripts, LLC*, No. 6:08-cv-479 (E.D. Tex. May 19, 2009) (denied); *Konami Digital Entertainment Co., Ltd. v. Harmonix Music Systems, Inc.*, No. 6:08-cv-286 (E.D. Tex. Mar. 23, 2009) (denied); *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144 (E.D. Tex. Mar. 5, 2009) (denied); *Invitrogen Corp. v. General Electric Co.*, No. 6:08-cv-113 (E.D. Tex. Feb. 9, 2009) (denied); *Invitrogen Corp. v. General Electric Co.*, No. 6:08-cv-112 (E.D. Tex. Feb. 9, 2009) (granted); *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995 (E.D. Tex. 2009) (granted); *J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, No. 6:08-cv-211 (E.D. Tex. Dec. 23, 2008) (denied); *Aloft Media, LLC v. Adobe Systems Inc.*, No. 6:07-cv-355 (E.D. Tex. Mar. 25, 2008) (denied); *Humanscale Corp. v. Weber Knapp Co.*, No. 6:07-cv-411 (E.D. Tex. Mar. 17, 2008) (denied); *Interactive Music Technology, LLC v. Roland Corp. U.S.*, No. 6:07-cv-282 (E.D. Tex. Jan. 7, 2008) (granted).

ball down the field, but only seeks a new field upon which to play. Finally, some parties have even called courts in this district to essentially "threaten" mandamus if a venue ruling is not issued within the timeframe desired by the parties. This Court manages a very busy docket—as do all courts in this district—with pending motions of varying levels of priority. Criminal cases take first priority because individuals' freedom is at stake. In the patent context, trials and Markman hearings are a high priority. Venue motions are important, but not any more important than everything else this court has to do. The court rules on these motions as soon as it can. The Civil Justice Reform Act of 1990 was instituted to provide checks on long-pending motions and cases. Courts in this district take their cases seriously and strive to timely address pending motions in an effort to resolve cases promptly. *See* DIR. OF THE ADMIN. OFFICE OF THE U.S. COURTS, CJRA REPORT 27 (Sept. 30, 2011) (showing only sixteen motions pending for more than six months within the Eastern District of Texas) (available at http://www.uscourts.gov/uscourts/statistics/cjra/2011-09/CJRASep2011.pdf). This Court will address motions to transfer venue as timely as possible, while balancing the many other issues unrelated to venue requiring the court's attention.

*Trial of Severed Cases*

After the Court has issued its Claim Construction Opinion and any Transfer Orders have become effective, the Court will solicit the advice of the remaining parties on how to best structure the trial of these cases. Will there be a separate trial as to each severed defendant as to all issues? Do some defendants wish to join together in a consolidated trial? Are there some issues that should be tried first as to some or all parties, such as invalidity or inequitable conduct? The Court looks to a number of factors in determining the proper trial plan for complex multiple party and multiple issue patent cases. While no single factor is dispositive, this court has

developed following the list of factors to be considered in balancing the equities to all parties involved:

    (1)    number of defendants;
    (2)    number of patents;
    (3)    number of asserted claims;
    (4)    complexity of the technology involved;
    (5)    similarity of functionality of accused instrumentalities;
    (6)    consistency of plaintiff's damages model against distinct defendants, *e.g.*, single expert report as to all defendants, how distinct is the theory of infringement and damages in the expert report as to individual defendants, etc.;
    (7)    consistency of defendants' non-infringement, validity, and damages positions, as exemplified by, among other things, expert reports, *e.g.*, single or multiple experts on non-infringement, single or multiple experts on validity, single or multiple experts on damages, etc.;
    (8)    collaboration by defendants, *e.g.* joint defense groups, one firm representing multiple defendants, etc.;
    (9)    risk of inconsistent results on common issues of fact or law;
    (10)    risk of jury confusion;
    (11)    cost of multiple trials to the parties;
    (12)    the Court's schedule and resources;
    (13)    other individualized issues specific to a particular case.

*See CEATS, Inc. v. Continental Airlines, Inc.*, No. 6:10-cv-120 (E.D. Tex. Feb. 14, 2012). Only after careful consideration of these factors, and the particular circumstances of the case, does the Court fashion a trial plan.[6] As always, the overall consideration is finding an equitable and fair trial plan for all parties—which inevitably requires compromise. Seldom does one side or the other get their ideal trial plan. Nevertheless, the Court attempts to be fair to all parties. Accordingly, all of these issues will be addressed at a later stage of case management when discovery is complete, the number of patents, claim terms and invalidity references has been narrowed, expert reports have been filed, and perhaps experts deposed.

---

[6] The Court has fashioned various trial plans depending on the factors present in the case. *See, e.g.*, *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446 (E.D. Tex. Jan. 20, 2012) (ordering a consolidated invalidity trial followed by three infringement and damages trials involving three defendant groups); *Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, No. 6:09-cv-203 (E.D. Tex. May 6, 2011) (ordering a consolidated trial on all issues except willfulness); *Bedrock Computer Techs., LLC v. SoftLayer Techs., Inc.*, No. 6:09-cv-269 (E.D. Tex. Mar. 28, 2011) (ordering two trials for two defendant groups); *Intel Corp. v. Commonwealth Scientific & Indus. Research Org.*, No. 6:06-cv-551 (E.D. Tex. Dec. 23, 2008) (ordering a consolidated trial on infringement, invalidity and willfulness followed by individual trials on damages).

**CONCLUSION**

For these reasons, the Court **ORDERS** that all claims pertaining to the following defendants or defendant groups be severed into separate causes of action:

1. Ricoh Americas Corporation
2. Belkin International, Inc.
3. BMW of North America, LLC
4. Mercedes-Benz USA, LLC
5. D-Link Systems, Inc.
6. Dish Network Corporation
7. Ford Motor Company
8. Garmin International, Inc. and Garmin USA, Inc.
9. General Electric Company
10. General Motors Company
11. JVC Americas Corporation
12. Novatel Wireless, Inc.
13. TomTom, Inc.
14. ViewSonic Corporation
15. Vizio, Inc.
16. Volkswagen Group of America, Inc.
17. Xerox Corporation
18. ZTE (USA) Inc. and ZTE Solutions Inc.

Norman shall pay the filling fee for these cases within ten days of this order issuing to avoid having the severed cause of action dismissed with prejudice. Further, the Court **ORDERS** that the above-severed cases are **CONSOLIDATED** for all pretrial issues (except venue) with the

original filed action, Cause No. 6:11-cv-495, which is the lead case. All parties are instructed to file any future motions (except relating to venue) in the lead case. Individual severed cases remain active for venue determinations and trial. Accordingly, Defendants' motions are **GRANTED IN PART** to the extent that their cases are severed from the original filed action.

The following motions contain additional requests for relief and shall remain pending in the lead case: Daimler North America Corporation and Mercedes-Benz USA LLC's Motion to Dismiss for Improper Joinder, or in the Alternative, Partial Motion to Dismiss Plaintiff's Complaint (Docket No. 109); Motion to Sever and Then Transfer Plaintiff's Claims Against General Motors, LLC and Brief in Support (Docket No. 195); and BMW of North America, LLC's Motion to Sever and Memorandum in Support (Docket No. 198).

**So ORDERED and SIGNED this 10th day of August, 2012.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**